```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
```
EASTERN SAVINGS BANK, FSB,

                        Plaintiff,         **REPORT AND RECOMMENDATION**

   -against-                         13-CV-6070 (AMD) (ST)

LINFORD W. JOHNSON, individually, and
as administrator of THE ESTATE OF
MULVINA ECCLESTON; NEW YORK
CITY ENVIRONMENTAL CONTROL
BOARD, MICHAEL JOHNSON, WILLIAM
ROBINSON, ARLENE WILLIAMSON,
KALICH WILLIAMSON, and AGATHA
JOHNSON,

                        Defendants.
```
------------------------------------------------------------X
```
**TISCIONE, United States Magistrate Judge:**

       Before the Court is Eastern Savings Bank, FSB's (hereinafter "Plaintiff") Motion for Default Judgment of Foreclosure and Sale against Defendants Linford W. Johnson (hereinafter "Defendant"), both in his individual capacity and as administrator of the estate of Mulvina Eccleston, as well as New York City Environmental Control Board, Michael Johnson, William Robinson, Arlene Williamson, Kalich Williamson, and Agatha Johnson (hereinafter "Non-Answering Defendants"). Compl., ECF No. 1; Pl Apr. 4, 2022 Mot. Default J., ECF No. 143. Pl. Oct. 30, 2020 Mot. Default J., 1, ECF No. 104-10. Defendant is the guarantor of two mortgages signed by the late Mulvina Eccleston, Defendant's mother, encumbering the property commonly known as 356 East 31st Street, Brooklyn, NY (Block: 4947, Lot:30) (hereinafter the "Subject Property"). Compl., 3, ECF No. 1; Def. Opp. Aff., ¶ 1, ECF No. 138-1. Plaintiff brings this motion in response to the Clerk of Court's Certificate of Default entered pursuant to Fed. R. Civ. P. 55(a)

on November 3, 2020, as well as the Clerk's Judgment granting Plaintiff's motion for summary judgment dated February 1, 2022. ECF No. 107; ECF No. 142

For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion be GRANTED, in part, and DENIED, in part, and that Plaintiff be awarded damages and additional relief as described herein.

## BACKGROUND

This case concerns two loans that encumber the Subject Property: a "Building Loan" and a "Project Loan". The Building Loan, dated April 26, 2007, consists of a note for $81,500 and a mortgage agreement encumbering the Subject Property. *Eastern Savings Bank, FSB v. Johnson*, No. 13-CV-6070, at 1-2 ECF No. 141 (hereinafter "Summ. J. Order")[1]. The Project Loan, dated April 26, 2007, consists of a note for $113,500 and a mortgage agreement as well. *See id* at 2. Plaintiff owns and holds both loans which were executed by Mulvina Eccleston, Defendant's mother. *Id*. Defendant served as guarantor for both loans and is also the administrator of his mother's estate. *See id*.

Ms. Eccleston defaulted on both loans when she failed to make payments due on April 1, 2008, for the Building Loan and December 1, 2009, for the Project Loan. *Id* at 2-3. In both instances, Ms. Eccleston resumed monthly payments but did not pay past due default interest and failed to pay off the principal loan balances before the maturity dates. *Id*.

Plaintiff initiated a foreclosure action on November 30, 2010. *Id* at 3. On April 14, 2011, the parties entered into a forbearance agreement under which Plaintiff agreed to give Defendant and Ms. Eccleston time to repay both loans in full. *Id*. In exchange, both Ms. Eccleston and

---

[1] This Report and Recommendation details the background of this lengthy case only insofar as is necessary to decide this Motion for Default Judgment. For a comprehensive factual and procedural history, see Judge Donnelly's Memorandum and Order granting summary judgment dated January 31, 2022. Summ. J. Order, ECF No. 141.

Defendant agreed that both notes would continue to accrue interest at the default interest rate of twenty-four percent until the loans were paid. *Id*. Additionally, both Ms. Eccleston and Defendant acknowledged they had defaulted on both loans. *See id* at 4.

When Ms. Eccleston and Defendant ultimately failed to meet the terms of the forbearance agreement, Plaintiff filed this action on November 1, 2013. *Id*. Throughout this multi-year litigation, Defendant has on multiple occasions failed to answer or otherwise respond to Plaintiff's filings, including this instant motion. *See id* at 4-5. The Clerk of Court ultimately issued a Certificate of Default pursuant to Fed. R. Civ. P. 55(a) on November 3, 2020. ECF No. 107. The Plaintiff then later moved for summary judgment which this Court granted on February 1, 2022, deciding all issues in favor of Plaintiff. ECF No. 142. Plaintiff now moves for Default Judgment for Foreclosure and Sale on the Subject Property and seeks damages in the amount of $1,443,991.85. Pl Apr. 4, 2022 Mot. Default J., ECF No. 143. Judge Donnelly then referred that motion to me for a Report and Recommendation on April 5, 2022.

## DISCUSSION

**I. Default Judgment Standard**

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

Once a defendant is found to be in default, he is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *Greyhound Exhibitgroup, Inc. v.*

*E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, a court retains the discretion to determine whether a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Id.* at 95-96.

Thus, despite a defendant's default, the plaintiff bears the burden of demonstrating that the unchallenged allegations and all reasonable inferences drawn from the evidence provided establish the defendant's liability on each asserted cause of action. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). In other words, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (internal quotations and citations omitted).

**II. Defendants' Liability**

"In an action to foreclose on a mortgage, the essential requirements of the plaintiff's case are proof of the existence of an obligation secured by a mortgage, and a default on that obligation." *United States v. Freidus*, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991) (citing *Northeast Savings, F.A. v. Rodriguez,* 553 N.Y.S.2d 490 (App. Div. 1990)). Thus, once the plaintiff submits the mortgage, the unpaid note, and evidence of default, it has established a *prima facie* entitlement to judgment, and the burden shifts to the defendant to rebut the plaintiff's evidence. *See BH99 Realty, LLC v. Qian Wen Li*, No. 10-CV-693 (FB) (JO), 2011 WL 1841530, at *5 (E.D.N.Y. Mar. 16, 2011); *United States v. Watts*, No. 13-CV-3211 (ADS) (WDW), 2014 WL 4275628, at *3 (E.D.N.Y. May 28, 2014).

Here, Plaintiff, through its Complaint and this Motion for Default Judgment and accompanying supporting documents, has established a *prima facie* entitlement to a default judgment against Defendant. The documents submitted establish the existence of promissory notes and mortgages for both loans. *See* Pl. Compl. ¶¶ 10-11, 21-22, ECF No. 1; Pl Apr. 4, 2022 Mot. Default J., ECF No. 143; Building Loan Note, ECF No. 143-3; Building Loan Mortgage, ECF No. 143-4; Project Loan Note, ECF No. 143-6; Project Loan Mortgage 143-7. Furthermore, Plaintiff has shown that Ms. Eccleston defaulted on both loans by failing to make timely payments. Brown Affidavit, ¶¶ 5-6, 13-14, ECF No. 143-13.

None of the Non-Answering Defendants have answered Plaintiff's complaint or otherwise defend this action in any way and Defendant has failed to file an opposition to the instant motion. Therefore, all defendants have failed to rebut Plaintiff's *prima facie* showing that it is entitled to a judgment of foreclosure and sale against all defendants. Accordingly, the Court respectfully recommends that the Court order that the Subject Property be foreclosed upon and sold.

### III.     Damages and Remedies

As liability has been established, this Court must now ascertain damages with "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). To prove damages, the movant need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup*, 973 F.2d at 159. An evidentiary hearing is not required so long as there is a basis, demonstrated through detailed affidavits and other documentary evidence, for the damages awarded. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).

Here, Plaintiff has submitted with its motion for default judgment the Building Loan Note, Mortgage, and Guarantee (ECF Nos. 143-3-5); the Project Loan Note, Mortgage, and Guarantee (ECF Nos. 143-6-8); an affirmation of Plaintiff's attorney Greg A. Friedman (ECF No. 143-10); an affidavit of Plaintiff's Senior Asset Manager supporting the Plaintiff's statement of damages (ECF No. 143-13); and a bill of costs and description of services rendered from the law firm representing Plaintiff (ECF No. 143-14-15). These documents are sufficient to allow the Court to calculate damages without holding a hearing.

Plaintiff requests total damages of $1,443,991.85 comprising of the following:

i. $195,000.00 in total unpaid principal on both loans,

ii. $515,675.51 in total default interest accrued as of February 11, 2022,

iii. $389.11 in late charges,

iv. $15.00 in miscellaneous charges,

v. $251,470.55 in protective advances,

vi. $376,156.95 in default interest on the protective advances,

vii. $7,782.73 in costs,

viii. 97,502.00 in attorneys' fees[2], and

ix. to be paid from the foreclosure and sale of the Subject Property through the appointment of Charles L. Emma, esq. as Referee.

*See* Affirmation of Regularity in Support of J. of Foreclosure and Sale, ¶ 19, ECF No. 143-1.

    *a.* *Unpaid principal balance*

---

[2] Plaintiff's Affirmation of Regularity in Support of Judgment of Foreclosure and Sale lists total legal fees due as $97, 502.00. Affirmation of Regularity in Support of J. of Foreclosure and Sale, ¶ 19, ECF No. 143-1. However, the Declaration of Services Rendered submitted in support of Plaintiff's motion for default judgment lists a total amount of legal fees due of $100,442.00. Decl. of Services Rendered, ¶ 4, ECF No. 143-14. This discrepancy is due to the inclusion of future expected legal fees in the Declaration not listed in the Affirmation. *See id*. I read this to mean Plaintiff requests only the $97,502.00 currently due.

Ms. Eccleston received $81,500 in return for her execution of the Building Loan note and received $113,500 in return for her execution of the Project Loan note for a total principal amount of $195,000.00. *See* Brown Aff., ¶¶ 2-3, ECF No 143-13; Affirmation of Regularity in Support of J. of Foreclosure and Sale, ¶ 19, ECF No. 143-1. Ms. Eccleston was obligated to repay, and Defendant guaranteed, this principal amount under the terms of the notes and guarantee agreement. *See* Building Loan Note, Recital, ECF No. 143-3; Building Loan Guarantee, § 1, ECF No. 143-5; Project Loan Note, Recital, ECF No. 143-6; Project Loan Guarantee, § 1, ECF No. 143-8. Plaintiff's records show that Ms. Eccleston's payments ultimately never reduced the principal amount due. Brown Aff., Exs. 1, 4, ECF No. 143-13. The mortgages provide that the mortgagee can recover the unpaid principal advanced under the notes through proceeds obtained from the foreclosure and sale of the mortgaged property. *See* Building Loan Mortgage, Art. II §§ 2.01(q)(III)(2), 2.02(d), ECF No. 143-4; Project Loan Mortgage, §§ 24(a)(iii), (b), ECF No. 143-7. Therefore, Plaintiff as mortgagee is entitled to recover the total unpaid principal balance of $195,000.00 through foreclosure and sale of the Subject Property.

    b.    *Interest*

Plaintiff also seeks interest on the principal of $515,675.51, the amount owed as of February 11, 2022. Affirmation of Regularity in Support of J. of Foreclosure and Sale, ¶ 19, ECF No. 143-1. Under the terms of the notes, Ms. Eccleston was required to repay interest on the principal calculated at an annual percentage rate of 12.5% and at a rate of 24% following any Event of Default—as defined therein—and after maturity. Building Loan Note, Recital, § 4.4, ECF No. 143-3; Project Loan Note, Recital, § 4.4, ECF No. 143-6. The total interest amount sought is comprised of unpaid standard note interest of 12.5% and unpaid default interest of 24% for each loan.

Plaintiff uses a *per diem* method of calculating interest owed. For example, Plaintiff submits it is owed $99,417.90 of unpaid note interest on the Building Loan. To reach this figure, Plaintiff first calculates the *per diem* amount of interest due by multiplying the principal balance ($81,500) by the interest rate (12.5%) and then dividing that number by 360.[3] Brown Aff., Ex. 2, ECF No 143-13. The *per diem* amount of interest, rounded to the nearest tenth, is $28.30 ($81,500 * .125) / 360). *Id*. Next, the *per diem* interest rate is multiplied by the number of days between July 1, 2012 (the final monthly interest payment made by Ms. Eccleston under the terms of the parties' forbearance agreement) and February 11, 2022 (the date as of which Plaintiff requests interest in its motion for default judgment). *Id*. There are 3513 days between July 1, 2012, and February 11, 2022. This calculation ($28.30 * 3513) yields interest in the amount of $99,417.90.

Applying the same method to the unpaid default interest due on the Building Loan, as well as the unpaid note and default interest due on the Project Loan yields totals of $115,670.82, $139,628.65, and $160,958.14, respectively. Brown Aff., Exs. 3,5-6, ECF No 143-13. I find that Plaintiff's calculations are correct and recommends that the Court award Plaintiff $515,675.51 in interest, to be satisfied from the foreclosure and sale of the Subject Property.

    c.    *Late charges and miscellaneous fees*

---

[3] Courts in this District routinely allow for the amount of interest owing under a note to be calculated on a *per diem* basis, even where the note itself provides for interest calculated at an annual percentage rate. *See, e.g., Courchevel 1850 LLC v. Donaldson*, No. 16-CV-6803 (RRM) (CLP), 2018 WL 1830809, at *7 (E.D.N.Y. Feb. 1, 2018), *report and recommendation adopted by*, No. 16-CV-6803 (RRM) (CLP), 2018 WL 5777018 (E.D.N.Y. Nov. 1, 2018). Furthermore, while courts in this District have required *per diem* interest be calculated based on a 365 day year where the contract terms are silent on interest calculation, this Court has also allowed a 360 day year when called for in the contract. *Compare Financial Federal Credit Inc. v. East-West Aggregate Inc.*, No. 09-CV-2904 (ADS) (AKT), 2011 WL 3918990, at *4 (E.D.N.Y. Apr. 15, 2011) *report and recommendation adopted by*, No. 09-CV-2904 (ADS) (AKT), 2011 WL 3919748 (E.D.N.Y. Sept. 7, 2011) (using "360 days in contractual calendar year" to calculate *per diem* interest), *with Eastern Savings Bank, FSB v. Robinson*, No. 13-CV-7308 (ADS) (SIL), 2016 WL 3365091, at *7 (E.D.N.Y. May 9, 2016) *report and recommendation adopted by*, No. 13-CV-7308 (ADS) (SIL), 2016 WL 3102021 (E.D.N.Y. June 2, 2016) (using 365 day year despite plaintiff's calculations using 360 day year where contract terms were silent as to interest calculation to calculate *per diem* interest). Here, both the Building Loan Note and Project Note Loan specify that interest is to be calculated based on a 360 day year, so Plaintiff's proposed calculations are appropriate. Building Loan Note, § 2 ECF No. 143-3; Project Loan Note, § 2 ECF No. 143-6.

Additionally, the Plaintiff seeks $389.11 in late charges and $15.00 in miscellaneous NSF fees on the Project Loan note. Affirmation of Regularity in Support of J. of Foreclosure and Sale, ¶ 19, ECF No. 143-1. Under Section 4.4 of the Project Loan note, Plaintiff may charge a late payment fee of up to 10% of "any periodic payment not received within ten (10) days of the date such payment is due . . . . In addition, [Ms. Eccleston] shall pay to [Plaintiff] the sum of $15.00 for any payment which is returned for any reason by [Ms. Eccleston's] bank." Project Loan Note, § 4.4, ECF No. 143-6. In support of these charges, Plaintiff relies on the sworn Brown Affidavit and accompanying Payoff Statement for the Project Loan Note listed as Exhibit 10. Brown Aff., ¶ 21, Ex. 10, ECF No 143-13. Upon review, I am satisfied of the accuracy of these charges and recommend the Court award Plaintiff the requested late and miscellaneous charges, to be satisfied from the foreclosure and sale of the Subject Property.

        d.      *Protective advances and interest*

Plaintiff also seeks $251,470.55 in protective advances and $376,156.95 in default interest on the protective advances pursuant to Section 23 of the Project Loan Mortgage. Under the mortgage, Ms. Eccleston was required to make payments to Plaintiff in a Tax and Insurance Escrow Fund "in order to accumulate with [Plaintiff] sufficient funds to pay . . . Taxes at least thirty (30) days prior to their respective due dates" as well as sufficient funds to pay all Insurance Premiums. Project Loan Mortgage, § 5, ECF No. 143-7. Furthermore, if Ms. Eccleston failed to make such payments, Plaintiff was entitled to take necessary steps to protect its interest in the Subject Property. *Id* § 23. Should Plaintiff opt to advance such payments under this section, Plaintiff is entitled to collect interest at the default rate of 24%. *See id.* Courts in this District have allowed plaintiffs in foreclosure actions to recover such advancements where the plaintiff has submitted sufficient documentation to prove the accuracy of its claims. *See Eastern Savings Bank,*

*FSB v. Robinson*, No. 13-CV-7308 (ADS) (SIL), 2016 WL 3365091, at *7 (E.D.N.Y. May 9, 2016) *report and recommendation adopted by*, No. 13-CV-7308 (ADS) (SIL), 2016 WL 3102021 (E.D.N.Y. June 2, 2016).

Here, Plaintiff has submitted substantial documentation demonstrating the accuracy of its claimed amount due for protective advances and interest. Plaintiff submits an escrow advance schedule detailing payments made for tax and insurance on the Subject Property along with checks and invoices demonstrating proof of such payments. Brown Aff., Ex. 7, ECF No 143-13. Additionally, Plaintiff presents an Interest on Negative Escrow chart calculating interest due on advance payments made using a *per diem* method of calculation based on the 24% default interest rate. Brown Aff., Ex. 8, ECF No 143-13. Upon review, I am satisfied that Plaintiff's claims for $251,470.55 in protective advances and $376,156.95 in default interest are accurate and that Plaintiff is entitled to recover such amounts.

  e. *Litigation costs*

Plaintiff also requests $7,782.73 supported by an itemized bill of costs listing all litigation related expenses since 2013. Bill of Costs, Ex. 1, ECF No. 143-15. The recovery of litigation costs is expressly provided for in both the Building Loan Note and the Project Loan Note. Building Loan Note, § 4.3, ECF No. 143-3; Project Loan Note, § 4.3, ECF No. 143-6. Additionally, Courts in this district have traditionally allowed for the recovery of litigation costs in foreclosure actions. *See, e.g., LeBlanc-Sternberg v. Fletcher*, 143 F.3d, 763 (2d Cir. 1998); *Wells Fargo Bank, N.A. v. Landi*, No. 13-CV-5822, 2015 WL 5655810, at *9 (E.D.N.Y. Aug. 14, 2015) *report and recommendation adopted by*, No. 13-CV-5822, 2015 WL 5657358 (E.D.N.Y. Sept. 22, 2015). Therefore, I recommend that the Court award Plaintiff $7,782.73 for litigation costs incurred.

  f. *Attorneys' fees*

Plaintiff further requests $97,502.00 in attorneys' fees. Under the "American Rule" attorneys' fees are recoverable when allowed by statute or an enforceable contract providing for such fees. *Summit Valley Indus., Inc. v. United Brotherhood of Carpenters & Joiners*, 456 U.S. 717, 721 (1982); *U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d. Cir 2004). Both the Building Loan Note and Project Loan Note allow Plaintiff to recover "reasonable attorneys' fees and disbursements" incurred in connection with "any foreclosure proceeding." Building Loan Note, § 4.3, ECF No. 143-3; Project Loan Note, § 4.3, ECF No. 143-6.

However, even when a plaintiff may recover attorneys' fees under the terms of a valid contract, plaintiff retains the burden of demonstrating the reasonability of such fees. *Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *8. Reasonable fees are "the product of a reasonable hourly rate and the reasonable number of hours required by the case. *Millea v. Metro-N R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)). Plaintiff arrives to the $97, 502.00 figure based on 318.78 hours of work performed by numerous attorneys and paralegals. Decl. of Services Rendered, ¶ 7, ECF No. 143-14. I examine both the reasonableness of the number of hours of work performed and the hourly rates of the attorneys and paralegals in turn.

      i.    <u>Reasonableness of hours worked</u>

"An application for attorney's fees must be supported by accurate, detailed, and contemporaneous time records." *Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *9 (quoting *La Barbera v. ASTC Labs, Inc.*, 752 F. Supp. 2d 263, 277 (E.D.N.Y. 2010)) (internal quotations omitted). Even when supported by such documentation "hours that were excessive, redundant, or otherwise unnecessary to the litigation" are note recoverable. *Id* at *10 (quoting *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 237 (2d Cir. 1987)) (internal quotations omitted).

Plaintiff submits detailed records of invoices for work performed listing the task performed, the hours needed, and the hourly rate. Decl. of Services Rendered, ¶ 7, ECF No. 143-14. These records date back to 2015 and upon review, I find that they are not excessive, redundant, or otherwise unnecessary. *Id*. In the seven years covered by the invoices, I recommend the court find 318.78 hours to be a reasonable amount.

ii. <u>Reasonableness of hourly rates</u>

To determine whether an hourly rate is reasonable, "a district court should generally use the prevailing hourly rates in the district where it sits." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 155 (E.D.N.Y. 2013). "Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals." *Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *8. Due to the relatively simple nature of actions involving mortgages and promissory notes, attorneys in such cases are "generally awarded fees at the lower end of the range." *Nationstar Mortgage LLC v. Kadlec*, No. 20-CV-363, 2021 WL 7906568, at *6 (E.D.N.Y. Jan. 11, 2021).

Plaintiff asserts that each line item was billed based on "the standard hourly rates for each attorney and/or paralegal" and that "each legal task was assigned to an appropriate professional and or staff person." Decl. of Services Rendered, ¶ 7, ECF No. 143-14. The Court has no reason to doubt the truth of this assertion. However, Plaintiff fails to provide any evidence with its motion identifying the names and relative experience of each billing attorney or paralegal that this Court has traditionally relied upon in similar cases and which Plaintiff has submitted with previous motions for Default Judgment. *See, e.g.*, *Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *9 (determining hourly rates based on evidence in record naming each billing attorney and detailing their relative experience); *Eastern Savings Bank, FSB v. Whyte*, No. 13-CV-6111, 2015 WL

790036, at *8 (E.D.N.Y. Feb. 24, 2015) (same); Decl. of Services Rendered, ¶ 9, Pl. May 10, 2019 Mot. Default J., ECF No. 76-6. Without further detail, the Court is unable to determine with certainty whether the work billed was performed by a partner, associate, or paralegal and so is unable to determine the reasonableness of the rates charged.

Rather than fully deny Plaintiff's request for attorneys' fees and risk further extending this years long litigation in which Defendant has failed to defend the claims against him, I recommend that the Court award attorneys' fees at a rate of $200 per hour, which represents the average hourly rate for associates in this district. *See Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *8. This rate strikes a balance given that numerous partners, associates, and paralegals have likely billed time to this matter over the years in which litigation has been ongoing. Using this rate to determine Plaintiff's total attorneys' fees based on 318.78 hours worked, I recommend the Court award $63,756.00 in attorneys' fees, to be satisfied from the foreclosure and sale of the Subject Property.

  g. <u>Appointment of referee and payment of fee</u>

Plaintiff also asks that this Court appoint Charles L. Emma, esq. as referee to sell the Subject Property and that he receive 10% of the winning bid by the purchaser of the Subject Property as payment for his service. *See* Proposed J. at 4, ECF No. 143-16. Courts routinely appoint referees to effectuate the sale of foreclosed properties. *See Inv. Fund 2, LLC v. Anthony for Estate of Hubbard-Watson*, No. 17-CV-1220 (DRH) (SIL), 2018 WL 4017691, at *7 (E.D.N.Y. July 30, 2018) (citations omitted), *report and recommendation adopted by*, No. 17-CV-1220 (DRH) (SIL), 2018 WL 4017584 (E.D.N.Y. Aug. 22, 2018)). A court appointed referee may receive a reasonable fee provided a plaintiff submit documentary evidence attesting to the reasonableness of the fee. *ARCPE Holding, LLC v. 9Q4U5E LLC*, No. 19-CV-6417 (DLI) (RER), 2022 WL 2467085, at *5 (E.D.N.Y. Apr. 15, 2022).

Plaintiff's sole reference to a Referee and the proposed fee appears in its Proposed Judgment. Proposed J. at 4, ECF No. 143-16. This Court has previously denied "mere reference[s] in a proposed order [as] inadequate to support the award of future referee's fees." *Gustavia Home, LLC*, v. Krupnikova, No. 16-CV-2104 (NGG) (RER), 2019 WL 4196035, at *3 (E.D.N.Y. June 1, 2019), *report and recommendation adopted as modified sub nom. by,* 16-CV-2104 (NGG) (RER), 2019 WL 4194273 (Sept. 4, 2019). As such, I recommend the Court grant the Plaintiff's request to appoint Charles L. Emma as referee but deny the Plaintiff's request for referee fees at this time. Since evidence that a foreclosure sale has occurred is often sufficient to support an award of referee costs, I recommend that Plaintiff be given leave to renew its request for referee fees following the sale of the property. *See id* at *2.

## CONCLUSION

For the reasons set forth above, this Court recommends that the motion for default judgment be GRANTED, in part, and DENIED, in part and that: (1) a judgment of foreclosure and sale be entered in Plaintiff's favor; (2) Plaintiff be awarded a total of $1,410,245.85 to be satisfied by the foreclosure and sale of the Subject Property; (3) Charles L. Emma be appointed referee to conduct the sale of the Subject Property; and (4) Plaintiff's request to award referee fees be denied with leave to renew.

Plaintiff is ordered to serve a copy of this Report and Recommendation upon Defendant at her last known address within five business days.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a

waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

    /s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
December 27, 2022


waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
December 27, 2022